750 P.2d 966

**Chet RODELL, Plaintiff–Respondent,**

v.

**John NELSON, Defendant–Appellant.**

No. 16678.

Court of Appeals of Idaho.

Feb. 18, 1988.

Joseph I. Mein, Coeur d'Alene, for defendant-appellant.

William W. Nixon, Coeur d'Alene, for plaintiff-respondent.

PER CURIAM.

This is an appeal from an order denying a motion to set aside a default judgment. John Nelson was sued by Chet Rodell in a dispute over a cattle pasturing arrangement. Nelson answered the suit and filed a counterclaim. Later, his attorney withdrew. When Nelson failed to appoint another attorney or to appear in person, the district court granted a default judgment on Rodell's complaint. The judgment also dismissed Nelson's counterclaim. Nelson moved to set aside the judgment, contending that he had not been served a copy of the order allowing his attorney's withdrawal. He further contended that the order was defective. Nelson's motion was denied. Today, we reverse.

The record reveals the following background facts. In 1976 Rodell delivered cattle to Nelson for pasturing. In 1982 Rodell sued Nelson for an accounting in regard to the livestock and for any proceeds Nelson had derived from the cattle. Nelson counterclaimed, seeking compensation for pasturing the cattle. The suit lay dormant on the court's calendar for several years. When the district judge proposed to dismiss the case, Nelson's attorney moved to withdraw. He informed the court that Nelson no longer wanted to be represented by him. The court allowed the attorney to withdraw and directed him to serve a copy of the withdrawal order upon Nelson pursuant to I.R.C.P. 11(b)(3). The attorney attempted to do so but was unsuccessful. A process server sent to Nelson's address was attacked by dogs. A certified letter sent to Nelson was returned "unclaimed." Nelson entered no personal appearance nor did any new attorney appear in his behalf. Upon Rodell's motion, the judge held Nelson in default and entered judgment accordingly. When Nelson moved to set aside the judgment, the district judge ruled that the withdrawal order would be deemed served and that any defect in the order

would "[make] no difference where ... Nelson refused to accept that notice." Accordingly, Nelson's motion was denied. This appeal followed.

■ The threshold question is whether the withdrawal order was properly deemed served. It is a well-settled general principle that a person has no right to shut his eyes or ears to information and then to say that he lacked notice of the avoided facts. 58 AM.JUR.2D *Notice* § 8 (1971). As a corollary to that principle, a person may not avoid the effect of a written notice by refusing service of the notice. *Compare State v. Quenzer*, 112 Idaho 756, 735 P.2d 1067 (Ct.App.1987) (receipt of notice mailed pursuant to statute creates inference of knowledge of contents where sufficiency of notice is not challenged). Here, the district judge found that Nelson had refused service of the withdrawal order. The finding is supported by substantial evidence and will not be disturbed on appeal. Upon this finding, the district judge correctly concluded that the order would be deemed served.

■ The next question, whether the order itself was defective, poses a more troubling problem. The district judge did not address the problem. As noted above, the judge reasoned that any defect in the order was immaterial if Nelson refused service of it. This reasoning may have some intuitive appeal, but it contains a *non sequitur*. Although a written notice can not be evaded, it does not follow that such evasion cures or renders immaterial any defect in the document itself. A person who refuses a notice is simply deemed to have knowledge of its contents. The legal sufficiency of those contents still must be determined. *See, e.g., Liberty Mutual Insurance Co. v. Wolfe*, 7 Mass.App. 263, 386 N.E.2d 1303 (Mass.App.1979).

The case of *Wasden v. Foell*, 63 Idaho 83, 117 P.2d 465 (1941), illustrates the point. There, a county sent to a property owner a notice of pending issue of a tax deed for non-payment of taxes. The property owner claimed that he had not received the notice because it was mailed to a third party. However, the Supreme Court held that the third party had been authorized to receive the property owner's mail and, therefore, knowledge of the county's notice would be imputed to the property owner. The property owner next contended that the notice was defective. The Supreme Court did not treat the issue as immaterial in light of the property owner's failure to read the notice. Rather, the Court addressed the issue on its merits. The Court examined the sufficiency of the notice and found that it substantially complied with pertinent statutory requirements.

■ Here, the requirements for notice of an attorney's withdrawal are set forth in Rule 11(b)(3):

If an attorney is granted leave to withdraw, the court shall enter an order permitting the attorney to withdraw and directing his client to appoint another attorney to appear, or to appear in person by filing a written notice with the court stating how he will represent himself, within 20 days from the date of service or mailing of the order to the client. After the order is entered, the withdrawing attorney shall forthwith, with due diligence, serve copies of the same upon his client and all other parties to the action. The withdrawing attorney may make such service upon his client by personal service or by certified mail to the last known address most likely to give notice to his client, which service shall be complete upon mailing.... If such party fails to file and serve an additional written appearance in the action either in person or through a newly appointed attorney within such 20 day period, such failure shall be sufficient ground for entry of default and default judgment against such party or dismissal of action of such party, with prejudice, without further notice, *which shall be stated in the order of the court.* [Emphasis added.]

This rule carries an extraordinary impact. It authorizes a court to enter a default judgment against a party who has responded to a suit by engaging an attorney, making an appearance, and—in this case—fil-

ing an answer coupled with a counterclaim. Such a party has not defaulted in any ordinary sense of the term. He has not failed to appear and defend. To the contrary, he has appeared and defended through counsel but simply has failed to take additional action upon his attorney's withdrawal.

Because of its extraordinary impact, Rule 11(b)(3) requires not only that a copy of the withdrawal order be given to the withdrawing attorney's client, but also that the order contain an explicit statement of the consequences if the client does not respond. Thus, the order must state that the client's failure to act may result in a "default judgment" against him or in dismissal of his "action," that such default judgment or dismissal will be "with prejudice," and that it will occur "without further notice."

In this case the notice sent to Nelson, and deemed to have been served upon him, contained the following language:

IT IS A FURTHER ORDER of this Court that Defendant, JOHN NELSON, appoint another attorney to appear or appear in person by filing a written notice with the Court, stating how he will represent himself, within twenty (20) days from the date of this Order. In the event of the failure of the Defendant to so appear and advise the Court such failure shall be sufficient grounds for the entry of a default against him and for such further relief as the Plaintiff may be entitled to under the law.

This language did not refer to dismissal of Nelson's counterclaim, although it mentioned "such further relief as the Plaintiff may be entitled to under the law." Neither did it state that any judgment would be with prejudice, nor that the judgment could be entered without further notice, as provided in Rule 11(b)(3). Nevertheless, Rodell urges that the language substantially complied with the requirements of the rule. We disagree. Although the phrase "such further relief" arguably was sufficient to warn of possible dismissal of Nelson's counterclaim—a question we need not decide today—the notice said nothing about the judgment being entered with prejudice or without further notice. We hold that these defects were material under the rule. As we have explained, such defects were not cured by Nelson's refusal of service.

A legally sufficient notice is a necessary predicate for entering a default judgment under Rule 11(b)(3). When the predicate does not exist, the judgment is voidable under I.R.C.P. 60(b)(4). *Knight Ins., Inc. v. Knight*, 109 Idaho 56, 704 P.2d 960 (Ct.App.1985); *Lundstrom v. Southern Idaho Pipe and Steel Co.*, 107 Idaho 189, 687 P.2d 579 (Ct.App.1984). Strict compliance with Rule 11(b)(3) is reasonable and necessary in light of the rule's extraordinary impact. Moreover, as we noted in *Knight:*

Rule 11(b)(3) provides a readily identifiable, straightforward requirement for counsel and the courts to satisfy. Compliance with the rule obviates any need for judges to weigh conflicting evidence of actual notice or to speculate concerning a litigant's state of mind. An entitlement to relief [when there is noncompliance with the rule] produces consistent, predictable results, unaffected by the varying philosophies that underlie exercises of discretion by individual judges.

109 Idaho at 60, 704 P.2d at 964.

Accordingly, we need not, and do not, determine that Nelson would have been misled by specific defects in the court's order, had he actually received and read it. Indeed, we acknowledge Nelson's general statement, in an affidavit accompanying his motion to set aside the default judgment, that he would have obtained other counsel had he been aware of his attorney's withdrawal. But Nelson's state of mind is not dispositive here. The question is whether the withdrawal order contained a notice sufficient under Rule 11(b)(3). Because it did not, it failed to establish the necessary legal foundation for a valid default judgment.

We can understand the district judge's impatience with this case and with Nelson's apparent conduct. Nelson may have seemed undeserving of relief based on defects in the withdrawal order. However, consistent adherence to the clear provisions of Rule 11(b)(3) will better serve the judi-

cial system in the long run than will ad hoc determinations of "deserving" or "undeserving" applicants for relief from default judgments under the rule.

Accordingly, the district court's order in this case, denying Nelson's motion for relief from the default judgment, is reversed. The case is remanded to the district court with instructions to set aside the judgment. No costs or attorney fees allowed.